IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MT. McKINLEY INSURANCE COMPANY and EVEREST REINSURANCE COMPANY,<br><br>　　　　Appellants,<br><br>　　v.<br><br>PITTSBURGH CORNING CORPORATION, et al.<br><br>　　　　Appellees. | Civil Action No. 13-1639<br><br>*Appeal from:*<br><br>Bankruptcy Case No. 00-22876 |

**MEMORANDUM OPINION**

Conti, Chief Judge

## I. Introduction

Before the court is a motion for relief from judgment (ECF No. 90) filed by Mt. McKinley Insurance Company and Everest Reinsurance Company (collectively "Mt. McKinley"). This bankruptcy case has a long history. In 2013, after thirteen years of proceedings, the bankruptcy court confirmed the Modified Third Amended Plan of Reorganization ("plan") of debtor Pittsburgh Corning Corporation ("Pittsburgh Corning"). *In re Pittsburgh Corning Corp.*, No. 00-22876, 2013 WL 2299620 (Bankr. W.D. Pa. May 24, 2013).[1] The plan establishes an asbestos trust and channels asbestos personal injury claims against Pittsburgh Corning to the trust. Mt. McKinley objected to the plan and appealed the bankruptcy court's confirmation order to this court. This court held that Mt. McKinley lacked standing to challenge the plan. In an opinion and order dated September 30, 2014, the court adopted the bankruptcy court's opinion and

---

[1] The bankruptcy court denied a motion for reconsideration and clarified the opinion confirming the plan. *In re Pittsburgh Corning Corp.*, No. 00-22876, 2013 WL 5994979 (Bankr. W.D. Pa. Nov. 12, 2013).

1

confirmation order and issued the accompanying asbestos channeling injunction under 11 U.S.C. § 524(g). *Mt. McKinley Ins. Co. v. Pittsburgh Corning Corp.,* 518 B.R. 307, 313 (W.D. Pa. 2014) (ECF No. 81). The parties stipulated that the plan would not take effect until after the resolution of Mt. Kinley's appeal to the Court of Appeals for the Third Circuit. (ECF No. 84.) On October 28, 2014, Mt. McKinley filed a notice of appeal. (ECF No. 85.) On March 26, 2015, Mt. Kinley filed its motion for relief from judgment under Federal Rule of Civil Procedure 60(b). The appellees oppose the motion.[2]

Because an appeal is pending before the Court of Appeals for the Third Circuit, the court has no authority to grant Mt. McKinley's motion for relief from judgment. *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."). Mt. McKinley asks the court for an "indicative ruling." (Mt. McKinley's Br. 15, ECF No. 91.) Under Federal Rule of Civil Procedure 62.1, if the court lacks authority to grant a timely motion due to a pending appeal, the court may "(1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1(a). As set forth below, the court will deny the motion because the evidence relied upon by Mt. McKinley does not show the confirmation order was procured by fraud and the court cannot revoke the confirmation order for any other reason. Mt. McKinley also seeks to have the court reconsider its decision that Mt. McKinley lacks standing, but the court has no legal authority to reconsider that decision at this time.

---

2    The appellees are Pittsburgh Corning, the Official Committee of Asbestos Creditors, the Legal Representative for Future Asbestos Claimants, PPG Industries Inc., and Corning Incorporated.

## II. Legal Standard

Federal Rule of Civil Procedure 60(b) gives the court authority to "relieve a party or its legal representative from a final judgment, order, or proceeding" under appropriate circumstances. Fed. R. Civ. P. 60(b). The list of reasons for granting a Rule 60(b) motion is broad and—as relevant to Mt. McKinley's motion—includes the discovery of new evidence (Rule 60(b)(2)), fraud (Rule 60(b)(3)), and "any other reason that justifies relief" (Rule 60(b)(6)). *Id.* A Rule 60(b) motion must be made with a reasonable time, and with respect to the discovery of new evidence or fraud within one year of the order or judgment. Fed. R. Civ. P. 60(c). Rule 60 does not limit the court's power to "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3). Civil Rule 60 generally applies to cases under the Bankruptcy Code. Fed. R. Bankr. P. 9024.

By statute, however, the court can only revoke a chapter 11 confirmation order if it was "procured by fraud." 11 U.S.C. § 1144. In full, § 1144 provides as follows:

> On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order *if and only if* such order was procured by fraud. An order under this section revoking an order of confirmation shall—
>
> (1) contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation; and
>
> (2) revoke the discharge of the debtor.

11 U.S.C. § 1144 (emphasis added). Rule 60 and Rule 9024 cannot provide a remedy that is foreclosed by statute because the rules of civil procedure and bankruptcy procedure may "not abridge, enlarge or modify any substantive right." 28 U.S.C. §§ 2072, 2075; *see Branchburg Plaza Assocs., L.P. v. Fesq* (*In re Fesq*), 153 F.3d 113, 116 & n.4 (3d Cir. 1998) (interpreting § 1330(a), the chapter 13

3

companion to § 1144, and rejecting the argument that Rule 60(b) sets forth alternative grounds for revoking a confirmation order).

To be entitled to relief under § 1144, the movant "must specifically allege facts showing fraud in the procurement of the confirmation order." *In re Northfield Labs. Inc.*, 467 B.R. 582, 588 (Bankr. D. Del. 2010); *see* 8 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 1144.03 (16th ed. 2015) ("In order for a court to revoke an order of confirmation, the court must specifically find that the order confirming the plan was procured by fraud.").

> It is not sufficient for the court to find that some fraud was committed in connection with the case. If the debtor or another party committed fraud unrelated to plan confirmation, the court may implement other remedies available to punish the perpetrator or remedy any harm caused by the fraud, but the court may not revoke the order of confirmation.

8 Collier on Bankruptcy ¶ 1144.03.

Fraud is not defined in § 1144, but courts "require a showing of actual fraudulent intent." *In re Longardner & Assocs., Inc.*, 855 F.2d 455, 461 (7th Cir. 1988).

> In considering revocation of an order of confirmation, the focus should be solely on whether the defendant made a false statement of a material fact, or failed to make a material disclosure, and whether the defendant did so with intent to mislead, conceal or defraud.

8 Collier on Bankruptcy ¶ 1144.05[3]; *see In re Moseley*, 74 B.R. 791, 803 (Bankr. C.D. Cal. 1987) *order vacated, appeal dismissed on other grounds*, 101 B.R. 608 (B.A.P. 9th Cir. 1989) ("To support a complaint for revocation, the plaintiff must prove each of the elements of a traditional cause of action for deceit: (1) that the debtor made a representation … which was materially false; (2) that the representation was either known by the debtor to be false, or was made without belief in its truth, or was made with reckless disregard for the truth; (3) that the

4

representation was made to induce the court to rely upon it; (4) the court did rely upon it; and (5) that as a consequence of such reliance, the court entered the confirmation order."). The fraud must be shown by a preponderance of the evidence. *Tenn-Fla Partners v. First Union Nat'l Bank of Fla.*, 229 B.R. 720, 727 (W.D. Tenn. 1999); 8 Collier on Bankruptcy ¶ 1144.05[3].

### III. Alleged Evidence of Fraud

#### A. *Evidence Before the Bankruptcy Court*

During the confirmation proceedings before the bankruptcy court, Garlock Sealing Technologies LLC[3] attempted to introduce into evidence eleven documents submitted in discovery in other litigation. According to Mt. McKinley, after two law firms submitted ballots in this case stating under oath that eleven individual clients had been exposed to Pittsburgh Corning's asbestos products, those law firms submitted discovery responses in tort litigation on behalf of the same eleven clients stating that they lacked sufficient information to admit or deny exposure to Pittsburgh Corning asbestos. (Mt. McKinley's Appellate Br. 22, ECF No. 56.) The bankruptcy court concluded that these documents were inadmissible. *Pittsburgh Corning*, 2013 WL 2299620, at *38.

On appeal, this court considered the eleven documents for the limited purpose of deciding whether Mt. McKinley had standing. *Mt. McKinley*, 518 B.R. at 326. The court concluded that, even if the discovery responses filed in other litigation were misleading or fraudulent, the evidence related to only eleven claimants out of more than 350,000—"a miniscule number." *Id.* at 327. Mt. McKinley asked the court to conclude that *all* 2,469 ballots submitted by the two law firms who authored the questionable discovery responses were invalid. *Id.* The court declined to make that "logical leap," but even if the court had so concluded, those ballots were still less than 1 percent of the claims filed in this case. *Id.* Mt. McKinley relied

---

3   Garlock Sealing Technologies LLC also appealed from the bankruptcy court's confirmation order, but it later voluntarily dismissed its appeal. (ECF No. 55.)

5

on *In re Global Industrial Technologies, Inc.*, 645 F.3d 201, 211 (3d Cir. 2011) (en banc), in which the court of appeals held that insurers had standing in the bankruptcy court to seek discovery concerning allegations that over 91 percent of silica claims were fraudulent. The small amount of evidence of alleged fraud in this case was "dramatically different from *Global Industrial Technologies*." 518 B.R. at 527. The court concluded that the plan did not harm Mt. McKinley and held that Mt. McKinley lacked standing to object to the plan. *Id.* at 529.

### B. New Evidence

Mt. McKinley premises its motion for relief from judgment on the discovery of new evidence of fraud. In an asbestos bankruptcy case in the Bankruptcy Court for the Western District of North Carolina, the court permitted discovery in fifteen settled asbestos tort cases. *In re Garlock Sealing Techs., LLC*, 504 B.R. 71, 84 (Bankr. W.D.N.C. 2014). The discovery showed that evidence of exposure to the asbestos products of bankrupt companies had been withheld by plaintiffs' lawyers in all fifteen cases. *Id.* In these fifteen cases, "on average plaintiffs disclosed only about 2 exposures to bankruptcy companies' products, but after settling with Garlock made claims against about 19 such companies' Trusts." *Id.* In early 2015, some of the evidence in the *Garlock* case was unsealed. Mt. McKinley asserts that this evidence shows that some plaintiffs' law firms filing master ballots in this case have engaged in fraud. (Mt. McKinley's Br. 2–3, ECF No. 91.)

Based upon the discovery in the *Garlock* case, Mt. McKinley identifies ten claimants for whom law firms filed ballots in this case but denied exposure to Pittsburgh Corning asbestos products in other litigation. (*Id.* at 3–12.) The law firms representing these claimants filed master ballots on behalf of 15,609 claimants with an aggregate value under the trust distribution procedures of $648 million. (*Id.* at 12.) The appellees assert that the ballots filed by one of the firms on behalf of four of the individual claimants were not counted due to technical deficiencies. (Appellees' Br. 7 & n.7, ECF No. 101.) Removing those uncounted

6

ballots, the appellees calculate the number of votes at issue as 14,659 with an aggregate value of $596 million. (*Id.* at 8 & n.8.)

Some of the evidence put forward by Mt. McKinley involves particularly troubling conduct. For example, in October 2004, a law firm representing a claimant in this case argued in the claimant's California tort case that "there is not a single piece of evidence" that he was exposed to Pittsburgh Corning's asbestos products. (Mt. McKinley Ex. 18, ECF No. 91-19.) In 2004 and 2009, the law firm certified under oath that the claimant had been exposed to Pittsburgh Corning asbestos. (Mt. McKinley's Br. 3, ECF No. 91.) Garlock deposed a Rule 30(b)(6) witness from the law firm, who testified that the firm "did not do a product exposure analysis for [the claimant] or anyone else." (Dep. Excerpt 87:12–13, Mt. McKinley Ex. 20, ECF No. 91-21.) A lawyer from another firm testified that his duty to his clients "is to maximize their recovery … and the best way for [him] to maximize their recovery is to proceed against the solvent viable non-bankrupt defendants first, and then if appropriate, to proceed against the bankrupt companies." (Dep. Excerpt 44:4–9, Mt. McKinley's Ex. 49, ECF No. 104-15.) The bankruptcy court in *Garlock* called this lawyer's statement "seemingly some perverted ethical duty." *Garlock*, 504 B.R. at 84.

IV. **Discussion**

   A. *Form of the Motion*

Appellees argue that Mt. McKinley's motion should be dismissed because an attempt to revoke a confirmation order must be filed as an adversary proceeding. (Appellee's Br. 4, ECF No. 101.) The Bankruptcy Rules provide that "a proceeding to revoke an order of confirmation of a chapter 11 … plan" is an adversary proceeding. Fed. R. Bankr. P. 7001(5). Appellees cite several decisions holding that the failure to file an adversary proceeding is grounds for denying a request to revoke a confirmation order. *See In re BGI, Inc.*, No. 11-10614, 2012 WL 5392208, at *4 (Bankr. S.D.N.Y. Nov. 2, 2012) ("Courts analyzing section 1144 have

consistently held that parties are barred from attacking a chapter 11 confirmation order by characterizing their action as an independent motion or cause of action, rather than an adversary proceeding to revoke the order."); *In re Air One, Inc.*, 75 B.R. 1003, 1004 (Bankr. E.D. Mo. 1987) ("Bankruptcy Rule 7001(5) clearly requires that a request for an order to revoke confirmation of a Chapter 11 plan be filed as an adversary proceeding and neither the Bankruptcy Code nor any bankruptcy rule contains any provision for converting a motion to such an adversary proceeding."). These decisions are not dispositive. None of the decisions cited by appellees is binding precedent and none involved an asbestos channeling injunction under § 524(g), which must be confirmed by the district court.

The Court of Appeals for the Third Circuit has not held that the failure to file an adversary proceeding is a procedural bar to relief under § 1144. A reasonable implication of the *Fesq* decision is that no such bar exists when the motion is based upon fraud. The court of appeals stated,

> if Section 1330(a) [the chapter 13 companion of § 1144] is read as stating that an order confirming a plan cannot be revoked except upon a showing of fraud, a complaint to revoke a confirmed plan may still be filed under Rule 60 (as contemplated in Rule 9024(3)) because fraud is one of the bases for relief under that rule.

*Fesq*, 153 F.3d at 116–17. The court of appeals held that the motion to revoke the confirmation order was improper because it was not based upon allegations of fraud, and the court of appeals did not mention the movant's failure to file an adversary action. *Id.* Under this precedent and the circumstances of this case, including the pending appeal, it is at least plausible that a Rule 60(b) motion satisfying the requirements of § 1144 is an appropriate vehicle for challenging a confirmation order.

Because the court will deny Mt. McKinley's motion on other grounds, the court will assume that the failure to file an adversary action does not foreclose the relief sought by Mt. McKinley. The court can only grant the motion if it finds the

8

confirmation order was procured by fraud. Mt. McKinley's arguments that the motion should be granted due to newly discovered evidence under Rule 60(b)(2) or any other reason justifying relief under Rule 60(b)(6) are unavailing.

### B. Was the Confirmation Order Procured by Fraud?

The evidence uncovered in the *Garlock* case arguably demonstrates that asbestos plaintiffs' law firms acted fraudulently or at least unethically in pursuing asbestos claims in the tort system and the asbestos trust system. The bankruptcy court in *Garlock* found evidence of an "effort by some plaintiffs and their lawyers to withhold evidence of exposure to other asbestos products and to delay filing claims against bankrupt defendants' asbestos trusts until after obtaining recoveries from Garlock (and other viable defendants)." *Garlock*, 504 B.R. at 84.

The evidence presented by Mt. McKinley does not demonstrate that the confirmation order was *procured* by fraud. The existence of fraud in connection with the case is not sufficient to warrant revocation if the fraud is unrelated to the confirmation of the plan. 8 COLLIER ON BANKRUPTCY ¶ 1144.03. The withholding of exposure evidence, if fraudulent, occurred in tort litigation against solvent defendants and is not related to plan confirmation. Another possible inference from the evidence presented by Mt. McKinley is that ballots were fraudulently submitted in this case on behalf of claimants who lacked the requisite evidence of exposure to Pittsburgh Corning's products. The evidence is insufficient to show that the plan confirmation was procured by fraud. Even if all the ballots submitted by the firms identified by Mt. McKinley—15,609, according to Mt. McKinley—are rejected, the approval of the plan by claimants would not be changed. In other words, the false representations, if any, would not be material to the confirmation of the plan.[4]

---

4 The trust distribution procedures contain provisions to deny fraudulent claims and penalize claimants, firms, or experts submitting fraudulent or unreliable evidence. *Mt. McKinley*, 518 B.R. at 327.

Mt. McKinley continues to speculate that Pittsburgh Corning, PPG Industries Inc., and Corning Incorporated conspired with plaintiffs' law firms to create a trust designed to pay fraudulent claims. (Mt. McKinley's Reply 6, ECF No. 111.) The bankruptcy court correctly found no evidence to support this theory or to justify discovery about the settlement negotiations. *Mt. McKinley*, 518 B.R. at 326. The new evidence does not support it. It remains mere conjecture and is not a basis for revoking the plan confirmation order.

### C. Reconsideration of Mt. McKinley's Standing

Mt. McKinley asks the court to reconsider its standing in light of the new evidence. (Mt. McKinley's Reply 8, ECF No. 111.) The court concluded that Mt. McKinley lacked standing because the plan was "insurance neutral" and the evidence of fraud was dramatically less than what was present in *Global Industrial Technologies*. *Mt. McKinley*, 518 B.R. at 328. Mt. McKinley argues that the new evidence "rises beyond a trifling fraud and is substantively more than sufficient to trigger standing under [*Global Industrial Technologies*]." (Mt. McKinley's Reply 8, ECF No. 111.) The court is unaware of any legal authority permitting it to reconsider Mt. McKinley's standing in light of the new evidence. The *only* reason for revisiting a plan confirmation order (aside from correcting clerical mistakes) is the procurement of the confirmation order by fraud. 11 U.S.C. § 1144; *Fesq*, 153 F.3d at 117 n.6. Accordingly, the court cannot "state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." FED. R. CIV. P. 62.1.

Mt. McKinley is not without remedies. If the court's application of *Global Industrial Technologies* to this case was erroneous, the court of appeals can remand for "a more searching review" of Mt. McKinley's collusion allegations. *In re Global Indus. Technologies, Inc.*, 645 F.3d at 215. If the court of appeals affirms the confirmation order, Mt. McKinley can pursue its defenses in coverage litigation. Mt. McKinley can also pursue litigation against individuals or entities whose fraud

has damaged it. (*See* Mt. McKinley's Br. 2, ECF No. 91 (stating that Garlock brought adversary proceedings against four law firms for fraud and conspiracy).)

V.   **Conclusion**

The court lacks the authority to grant Mt. McKinley's motion for relief from judgment. If the case was remanded for the purpose of considering the motion, the court, as discussed above, could not grant the motion. The motion will be denied. An appropriate order will be entered.

    Dated: August 12, 2015                      /s/ Joy Flowers Conti
                                                          Joy Flowers Conti
                                                          Chief United States District Judge